Abraham DUMAN and Leo Arnstein, as Co-Trustees for the Barbara Duman and Pamela Duman Trusts, Plaintiffs,

v.

CROWN ZELLERBACH CORPORA-
TION, A Nevada corporation,
Defendant.

No. 85 C 3286.

United States District Court,
N.D. Illinois, E.D.

Oct. 15, 1985.

Robert A. Holstein, Holstein, Mack & Associates, Marshall Patner, Orlikoff, Flamm & Patner, Frederic Brace, Brace & O'Donnell, Chicago, Ill., for plaintiffs.

Richard A. Levy, John P. Lynch, William J. Gibbons, Latham & Watkins, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

This complaint is a ripple from a recent attempted takeover of defendant Crown Zellerbach Corporation (Crown). As a defense against that attempt Crown's directors adopted a "poison pill" strategy. An unfriendly takeover would activate various shareholder rights, for example the right to buy $200 worth of stock in the surviving entity for $100, thus making the acquisition highly expensive. Crown also filed a lawsuit in the United States District Court in Nevada against the leaders of the takeover bid. The would-be acquisitors in turn sued Crown and its directors in the Southern District of New York.

Meanwhile, plaintiffs here, representing trusts which hold 120 shares of Crown Zellerbach stock, responded as shareholders to the "poison pill" by filing this action against the corporation. Plaintiffs bring a stockholders' derivative suit and a class action suit on behalf of themselves and all other shareholders similarly situated. Their amended complaint alleges that the adoption of the "poison pill" rights had an adverse effect on the value of their shares, gave the board of directors power beyond its authority, infringed on shareholder rights, and misappropriated shareholder rights to alienate their shares. Plaintiffs ask this court to issue a mandatory injunction compelling Crown Zellerbach "and those acting in concert with it" to redeem the rights, or alternatively to declare the rights, and any action taken toward putting them into effect, void.

Crown has moved to dismiss the entire action under Rule 12(b)(7) of the Federal Rules of Civil Procedure for failure to join the members of Crown's board of directors, who, it maintains, are indispensable parties under Rule 19(b). Alternatively, it has moved to dismiss the class action claims under Rule 12(b)(6), arguing that only derivative claims can be legally recognized on these facts. As a third alternative, it has requested transfer of the action to the District of Nevada under 28 U.S.C. § 1404(a). This court delayed consideration of these motions while awaiting further developments. Now a truce has been declared in the struggle that started it all. The leaders of the takeover bid have reached a compromise with the board and all other litigation is no longer active. Plaintiffs here, however, continue to pursue their claim. A ruling is necessary. Defendant's motions are denied.

## I. JOINDER OF THE BOARD OF DIRECTORS

■ The "joinder of persons needed for just adjudication" under Rule 19 requires a two-step analysis. First, the court must determine whether a person omitted as a party should be joined if feasible, following the guidelines of Rule 19(a). In a suit by shareholders alleging injury to themselves and the corporation by an action of the corporation's board, several courts have found that a director "claims an interest relating to the subject of the action," and should be joined, if possible. Fed.R.Civ.P. 19(a)(2). *See Miller v. American Telephone & Telegraph Co.*, 394 F.Supp. 58 (E.D.Pa.1975), *aff'd* 530 F.2d 1964 (3d Cir. 1976). If, however, joinder of that person would deprive the court of jurisdiction either because it lacks personal jurisdiction over him or because his presence would eliminate diversity, then the court moves to a second determination: whether that person is "indispensable." The court may still find "in equity and good conscience" that the action may proceed without him. Fed. R.Civ.P. 19(b). The second determination is required here. Seven of the thirteen directors of Crown Zellerbach apparently reside in California and it is not certain that any is subject to process in Illinois. If joined, their presence would require dismissal of the suit for lack of jurisdiction over them.

The weight of authority in this circuit and elsewhere holds that in an action against a corporation, when joinder would defeat jurisdiction in plaintiff's chosen forum, normally the action should proceed without directors, officers or controlling shareholders. *See Bio-Analytical Services, Inc. v. Edgewater Hospital, Inc.*, 565 F.2d 450 (7th Cir.1977), *cert. denied* 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978); *Anrig v. Ringsby United*, 603 F.2d 1319 (9th Cir.1978). In *Bio-Analytical*, a suit on a contract with a corporation, the Seventh Circuit found it could dispense with the president and sole officer of the corporation even though he was to have performed the services under the contract. His presence would have destroyed diversity, while in his absence a fully adequate judgment which would not prejudice him could be fashioned. 565 F.2d at 453.

Rule 19(b) directs a court to consider four factors, of which three are relevant to joinder of a corporation's agents or fiduciaries. The court should determine to what extent rendering a judgment in the absence of a party might be prejudicial to him, whether without him the court can render an adequate judgment, and whether plaintiff will still have an adequate remedy if the action is dismissed. Usually, applying those factors to a suit against a corporation yields a determination that directors are not indispensable. In *Anrig*, 603 F.2d at 1325–1326, where leaseholders alleged misrepresentation and unfair business practices by a corporation in leasing trucking equipment, the Ninth Circuit refused to find officers and directors indispensable. Possible prejudice to them seemed unlikely and that factor was given little weight. Dismissal would have jeopardized the plaintiff's remedy since the action would have been time-barred. The plaintiff could be adequately compensated with a judgment against the corporation. Under those circumstances the suit should proceed.

The result does not change significantly when the action lies between shareholders and their corporation. In *Levin v. Mississippi River Corp.*, 289 F.Supp. 353, 361 (S.D.N.Y.1968), the court found that a derivative and class action for the declaration of dividends could proceed without joining a majority of the board of directors. Again prejudice was unlikely. Dismissal would have deprived plaintiff of his chosen forum and probably of his remedy. The directors of the national corporation lived in several different states and no forum had jurisdiction over all of them. This concern is echoed in the case at bar. While seven directors of Crown Zellerbach are domiciled in California, one resides in both Maine and Florida and there is one each in New York, North Carolina, Texas, Oregon and Hawaii.

■ *Levin* also held that in a suit by shareholders a judgment issued only

against the corporation would be adequate. 289 F.Supp. at 362. Older law found that a decree ordering a corporation to do an act was ineffective unless the injunction could also run against the corporation's directors personally. However, the trend since *Kroese v. General Steel Castings Corp.*, 179 F.2d 760 (3d Cir.1949), *cert. denied*, 339 U.S. 983, 70 S.Ct. 1026, 94 L.Ed. 1386 (1950), is to find that injunctive relief against a corporation also runs against its directors. The *Kroese* court, 179 F.2d at 763–764, found lack of jurisdiction over directors no problem in ordering a corporation to pay a dividend. The judgment of the court obviates the need for anything except a ministerial act by the directors. *Accord: Levin*, 289 F.Supp. at 361–62, and cases cited there. Similarly, the Seventh Circuit found, in a suit to force a corporate name change, that the action could proceed without the directors. *Hulbert Oil & Grease Co. v. Hulbert Oil & Grease Co.*, 371 F.2d 251, 256 (7th Cir. 1966), *cert. denied* 386 U.S. 1032, 87 S.Ct. 1482, 18 L.Ed.2d 594 (1967). It found the contention that a mandatory injunction would otherwise be ineffective "without merit." Similarly, this court, with jurisdiction over the corporation, could effectively order redemption of the "poison pill" rights without joining the board of directors.

Defendant attempts to bring its motion within a narrow exception for intracorporate issues. Directors have been found indispensable where the complaint alleges that they themselves have committed a tort or similar wrongdoing and relief is sought from the directors personally. *Dowd v. Front Range Mines, Inc.*, 242 F.Supp. 591 (D.Colo.1965); *see also Klitzner Industries v. H.K. James & Co.*, 96 F.R.D. 614 (E.D. Pa.1983) (controlling shareholders). In such cases a real possibility of prejudice to the absent defendant may exist. Moreover, plaintiff obviously cannot get relief from directors personally unless they are parties. Because the complaint here speaks of a breach of fiduciary duty, and asks for an injunction against the corporation "and those acting in concert with it," Crown maintains that plaintiffs seek relief

from the directors. This court does not read the complaint so imaginatively. *Levin*, 289 F.Supp. at 356, *Hulbert*, 371 F.2d at 255, and *Kroese*, 179 F.2d at 762, for example, all involved breaches of fiduciary duty. That fact did not make it impossible to fashion an adequate remedy in the absence of the directors, nor did it make them indispensable parties. The phrase in the prayer for relief merely articulates the modern principle that an injunction against a corporation is effective against its agents and fiduciaries. The recent ruling in open court in this district on a similar complaint is not to the contrary. In *Young v. Colgate-Palmolive Co.*, No. 84 C 9662 (N.D.Ill. Feb. 14, 1985), Judge Marshall dismissed a shareholder suit over "poison pill" rights for lack of jurisdiction over the board of directors. But in that action the plaintiff had joined the directors as defendants from the outset and the plaintiff, not the court, considered them indispensable (Tr. at 2). This court can grant an adequate judgment in the present case without joining the directors.

Considering all the appropriate factors under Rule 19(b), members of the Crown Zellerbach board of directors are not indispensable to this action. They will not be prejudiced by a judgment here. There are alternative forums where more directors could be joined, but none where all can be joined. The relief which plaintiff seeks does not require their joinder. This court in equity and good conscience sees no need to deprive plaintiffs of their choice of forum. Defendant's motion to dismiss under Rule 12(b)(7) is denied.

## II. DISMISSAL OF THE CLASS ACTION CLAIMS

■ Defendant also has moved to dismiss the class action component of the plaintiffs' claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. It asserts that as a matter of law a shareholder challenge to a rights plan such as Crown's "poison pill" can only be brought as a derivative suit. It reasons that a class action is grounded on injuries

to or infringements of the rights of individuals. An individual shareholder's action lies only when that shareholder has suffered an injury which is distinct from a general injury to shareholders as a whole, or when a right in his contract with the corporation as shareholder has been infringed. Here, if the "poison pill" plan is an injury, all shareholders have suffered the same injury. Therefore, there is no individual action, and so no class action.

It is true that the Delaware court which saw the first shareholders' suit against a "poison pill" plan reached exactly the same conclusion as defendants, using the same reasoning. *Moran v. Household International, Inc.*, 490 A.2d 1059, 1069–72 (Del. Ch.1985). However, it did not use that conclusion as a ground to dismiss. Plaintiffs in that case had brought individual claims. The court recharacterized them as derivative, found that the plaintiffs had complied with Delaware procedure for derivative actions, and denied a motion to dismiss. Also, the court was ruling on the motion only after a full trial with expert testimony. *Id.* at 1069.

This court is reluctant to cut off at the pleading stage part of a suit in a newly developing area of corporation law. The standard for granting a Rule 12(b)(6) motion is the existence of no set of facts on which relief can be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The Seventh Circuit has long recognized that some allegations of fact by shareholders may support either a derivative suit or an individual cause of action, or both. *Borak v. J.I. Case Co.*, 317 F.2d 838 (7th Cir.1963), *aff'd* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). Some shareholder suits have, like the case at bar, been brought as "hybrids," combining derivative claims and class claims. *See, e.g., Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326 (7th Cir.1969); *Boggess v. Hogan*, 410 F.Supp. 433 (N.D.Ill.1975). This court is not as sure as the Delaware court that a "poison pill" plan does not implicate individual contract rights such as voting and legitimate procedures to gain control. *Cf.*

*Household,* 490 A.2d 1059, 1070, 1079–80. The issue deserves some factual development. If the legal conclusions prove as obvious as defendant maintains they are, a motion for summary judgment would be an appropriate vehicle for handling these claims. For now, defendant's motion is denied.

## III. TRANSFER

Defendant also has moved to transfer this case to the United States District Court for Nevada, under 28 U.S.C. § 1404(a). That statute provides for a transfer to any district where the action might have been brought originally "for the convenience of parties and witnesses" when transfer would be "in the interest of justice." *Id.* Defendant argues that Nevada, Crown's place of incorporation, is closer to corporate headquarters in San Francisco and therefore more convenient for both the corporation as a party and witnesses such as Crown's board of directors. Also, the validity of the plan will be governed by Nevada law.

 Since defendant is a Nevada corporation, the action certainly could have been brought in Nevada. However, a section 1404(a) motion to transfer is within the discretion of the trial court. *Brown v. Grimm*, 624 F.2d 58 (7th Cir.1980); *FDIC v. Citizens Bank & Trust Co. of Park Ridge*, 592 F.2d 364 (7th Cir.), *cert. denied* 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979). Plaintiffs' choice of forum is entitled to considerable deference, particularly where, as here, the plaintiffs reside in the district where the action has been brought. *FDIC*, 592 F.2d at 368; *Continental Illinois National Bank v. Stanley*, 585 F.Supp. 610, 612 (N.D.Ill.1984). That factor is considerably less important when plaintiffs represent a class, *Blumenthal v. Management Assistance, Inc.*, 480 F.Supp. 470 (N.D.Ill.1979), particularly when it is highly unlikely that either of them will need to testify at trial. However, inconvenience for defendant from plaintiff's choice is still not of itself a reason to move

the suit. A defendant must clearly show that the balance of convenience and the interests of justice substantially favor transfer. *Commodity Futures Trading Commission v. Savage,* 611 F.2d 270 (9th Cir.1979); *Continental,* 585 F.Supp. at 612.

■ This court is not persuaded that defendant has met that burden. In striking the balance one must weigh "the convenience of the witnesses and the parties, the costs of the transfer, the public interest involved and any special circumstances present in the case.... Each case must be examined on its own facts." *FTC v. MacArthur,* 532 F.2d 1135, 1143 (7th Cir.1976). Considering all those factors, this case presents special circumstances which make no single venue truly convenient. Defendant's corporate headquarters is in California. It is a Nevada corporation. Its directors are scattered from Maine to Hawaii. Shareholders also dwell across the nation. Transfer to California might be worth considering since the plan was adopted at a meeting there and corporate records are there, but defendant has asked instead for transfer to Nevada. Except for the fact that defendant is a Nevada corporation and Nevada law applies, Nevada has no relation to this suit. When defendant made its motion, judicial economy would have been served by consolidation of this suit with the action in Nevada. However, since then, that action first was transferred to New York and then became inactive. Plaintiffs would suffer some inconvenience and increase in expense if the suit were transferred, from the necessity of representation in Nevada. *Cf. Blumenthal,* 480 F.Supp. at 474. To the extent that Nevada law applies here, this court believes that it has the resources to make an accurate determination. *Cf. Levin,* 289 F.Supp. at 360.

■ Defendant correctly notes that the convenience of witnesses is ordinarily a major consideration in motions to transfer. *Saul Stone & Co. v. Browning,* 593 F.Supp. 343 (N.D.Ill.1984). It argues that Nevada is closer to more of its witnesses than Chicago is. That factor, however, in this court's best judgment, should carry less weight here since the inquiry is not likely to be fact-intensive. This is not an automobile accident case, where eyewitness testimony is crucial. Defendant represents that it intends to call all its directors to testify to the circumstances surrounding adoption of the plan but, given how dispersed they are, they probably would not be significantly more inconvenienced by a trial in Chicago than by a trial in Reno. Fly they must in any event. Moreover, it is probable that only some of them will testify at trial. Once their depositions have been taken where they reside (which is not Nevada) the parties will have a firm grasp of what led up to the adoption of the plan, with most of the testimony cumulative. Credibility determinations are not likely to be of paramount importance. Rather, the legal implications of corporate action will probably be the focus of the dispute. For that reason, the present case may well present the rare occasion where the convenience of expert witnesses, or more properly, the considerable expense of paying for their time, is entitled to some weight. *Cf. Blumenthal,* 480 F.Supp. at 474. The case turns not on facts but whether the plan was legal. Expert testimony on the economic effects of the "poison pill" strategy, and on its effect on corporate control, will be central to that determination. *Cf. Household,* 490 A.2d 1059, 1067–68. Chicago's central location at the hub of the nation's transportation network and the availability of experts in a major metropolitan center may therefore even be an advantage.

In short, Crown has not demonstrated a clear balance which favors Nevada. In *Blumenthal,* 480 F.Supp. at 474, a class action against a corporation, the court concluded, "At best the factors considered by the court only slightly favor a transfer ... transfer will be denied where, after balancing all the factors, the equities lean but slightly in favor of the movant." *Cf. Continental,* 585 F.Supp. at 613. That conclusion applies to these facts as well. The motion to transfer is denied.

**Conclusion**

For the foregoing reasons, defendant's motion to dismiss under Rule 12(b)(7), defendant's motion to dismiss the class action claims under Rule 12(b)(6), and defendant's motion to transfer to the District of Nevada under 28 U.S.C. § 1404(a), are all denied.