Susan G. MORGAN, R. Thomas Geist, Lawrence Niwa, Karen Niwa, and Laura Marchese, Plaintiffs,

v.

KOBRIN SECURITIES, INC., Barrett Roy Kobrin, Richard Leon Kobrin, Rodney Arden Brown, Warren S. Sandy, Leonard Berman, Lawrence Zuliani, Harold E. Winkler, Cosmetic Sciences, Inc., Mario J. Ebonietti, Alvin J. Goren, Eli Gorenberg, Edward A. Trevison, Rachael Santos, and Ronald Hunter, Defendants.

No. 85 C 6119.

United States District Court, N.D. Illinois, E.D.

Nov. 4, 1986.

W.K. Gullberg, Jr., Chicago, Ill., Stephen H. Landuyt, Monmouth, Ill., for plaintiffs.

Michael J. Rovell, Richard J. Nogal, Jenner & Block, Chicago, Ill., for defendant Barrett Kobrin.

Paul A. Brady, Floyd A. Wisner, Lord, Bissell & Brook, Chicago, Ill., for defendants Rodney A. Brown and Lawrence Zuliani.

James L. Schwartz, Mark H. Schiff, Saharack, Schwartz & Schiff, Ltd., Chicago, Ill., for defendant Ronald Hunter.

Richard Kobrin, pro se.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiffs Susan G. Morgan ("Morgan"), R. Thomas Geist ("Geist"), Susan Marchese ("Marchese") and Lawrence and Karen Niwa ("Niwas") brought a thirteen-count complaint against Barrett Roy Kobrin ("Kobrin"), Kobrin Securities, Inc. ("KSI") and thirteen others. Eight counts are directed against Kobrin. KSI has filed for Chapter 11 reorganization protection and the proceedings against it have been stayed pursuant to 11 U.S.C. § 362(a) (1985). Counts I through V allege violations of the Securities and Exchange Act of 1934. Count VI alleges common law fraud and count VIII alleges violations of the Racketeer Influenced and Corrupt Organizations Act (RICO).

Defendant Kobrin has two motions before this court.[1] The first is a motion to dismiss under Fed.R.Civ.P. 12(b)(6). Kobrin argues that plaintiffs have failed to: (1) comply with the pleading requirements of Fed.R.Civ.P. 8; (2) timely file the complaint pursuant to 15 U.S.C. § 78i(e); (3) allege fraud with the particularity required by Fed.R.Civ.P. 9(b); (4) adequately allege a RICO violation under 18 U.S.C. § 1961; and (5) join an indispensable party pursuant to Fed.R.Civ.P. 19. Alternatively, Kobrin moves to stay the entire action pending resolution of KSI's bankruptcy proceeding or pending arbitration of plaintiffs' claims. For the reasons discussed below, defendants' motions are denied.

### FACTS

The principal player in the alleged scheme,[2] Maurice Aresty ("Aresty"), is not

---

**1.** There are a number of other motions before this court that can be disposed of summarily. Defendants Zuliani and Brown move to dismiss, generally on the same grounds as Kobrin. However, plaintiffs have failed to file answering memoranda to this motion as required by Local Rule 13. Zuliani and Brown, as mere KSI employees, stand in a different relationship to the conduct which caused plaintiff's injuries than Kobrin. This court is not required to construct for plaintiffs their argument in favor of the liability of Zuliani and Brown. Thus, pursuant to Local Rule 13, defendants' motion is granted. However, so as not to unduly prejudice plaintiffs' claim they are given 21 days from the date of this order to move for reconsideration. If plaintiffs so move, their motion shall include a supporting memorandum as Rule 13 requires.

Defendant Hunter has moved for dismissal on the grounds that this court lacks subject matter jurisdiction. The only count against Hunter alleges common law negligent misrepresentation in his capacity as both Morgan's and the Niwas' accountant. Since the complaint reveals no independent basis for the exercise of federal jurisdiction over Hunter, his motion is granted. *Aldinger v. Howard,* 427 U.S. 1, 14–15, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976).

Finally, defendant Richard Leon Kobrin has filed a *pro se* counterclaim for what appears to be malicious prosecution. In addition, he objects to the exercise of jurisdiction by and the venue of this court. Jurisdiction under the Securities and Exchange Act of 1934 and RICO are national and thus proper in any federal district court. Venue is proper because the transactions that form the basis of the alleged violations occurred in this district and Richard Leon Kobrin was a corporate officer of KSI, the alleged violator. *See* 15 U.S.C. § 78aa (1976); 18 U.S.C. § 1965(a) (1982). Plaintiffs have moved to dismiss the counterclaim for failure to state a claim. Plaintiffs' motion is denied pursuant to Local Rule 13 because, once again, they have failed to brief their motion.

**2.** Of course, in ruling on a motion to dismiss under Rule 12(b)(6), the court must take all well-pleaded allegations in the complaint as

named as a party to this lawsuit. The story unfolds in January 1983, when Aresty agreed to solicit stock brokerage customers for defendant Lawrence Zuliani ("Zuliani"). In March 1983, Zuliani left his firm and took a job with defendant Kobrin Securities, Inc. ("KSI"). In April 1983, defendant Kobrin agreed to handle brokerage transactions for Aresty's clients. At this time, Kobrin first told Aresty that he had inside information about the companies whose stock KSI sold. Kobrin told Aresty that he would supply Aresty with this information either directly or through Zuliani. Aresty should then pass the inside information along to his clients.

Aresty first met plaintiff Morgan in January 1983. They were introduced through her accountant. Aresty represented himself to Morgan as a financial planner. At Aresty's urging Morgan sold all of her holdings and invested in over-the-counter stocks Aresty recommended. Morgan continued to trade through Aresty, on his recommendations, through June 1983. In June, she suspended trading until she could verify Aresty's representations. Throughout the summer Aresty continued to solicit Morgan's business. In October 1983, Morgan again traded stock recommended by Aresty.

The other plaintiffs tell similar stories. Geist apparently met Aresty through Morgan. Like Morgan, Geist traded through Aresty until June 1983, when he suspended trading. He also consummated a final trade with Aresty in October 1983. Marchese alleges she knew Aresty prior to January 1983, in his capacity as an insurance salesman. According to Marchese, Aresty controlled most of her financial dealings. On Aresty's representations, she invested in high risk stocks. She suspended trading with Aresty in October of 1983. The Niwas also knew Aresty as an insurance salesman. The Niwas invested with Aresty on the assurances he was choosing conservative investments.

The bulk of the allegations involve the sale of stock in Cosmetic Sciences, Inc. ("CSI"). CSI is a small pharmaceutical firm, traded over the counter. CSI contracted with KSI to market CSI stock. At Kobrin's behest Aresty touted CSI stock as a low-risk investment. He told plaintiffs that he could double their money in a short time because KSI controlled the stock's price. In fact, CSI was a highly speculative investment. CSI's sales were subject to seasonal declines and had dropped 44 percent prior to 1983. CSI's products were dependent on uncertain Food and Drug Administration approval. In addition, the company was dependent on two key managers and involved in litigation with potential adverse impact on CSI's continued viability. Nevertheless, when asked about the stock, Aresty consistently quoted the asking and not the bid price, thus overvaluing the stock. Similar representations were made concerning other stocks KSI sold.

## I. Motion to Dismiss

### A. Federal Rule of Civil Procedure 8(a)

Kobrin initially contends that plaintiffs' complaint is defective because it does not comply with the Rule 8(a)(2) requirement that a complaint contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Kobrin contends that the length and complexity of plaintiffs' complaint mandates its dismissal with prejudice. *See Michaelis v. Nebraska Bar Association,* 717 F.2d 437, 438–9 (8th Cir.1983).

▌ Plaintiffs' second amended complaint, running almost 80 pages, is certainly prolix. However, as one commentator notes:

Rule 8(a)(2) speaks of a short and plain statement of each claim, not a short and plain pleading. Hence, in the context of a multiparty, multiclaim complaint each claim should be stated as succinctly and

true. *Al-Hazmi v. City of Waukegan,* 579 F.Supp. 1441, 1442 (N.D. Ill. 1984). The complaint will only be dismissed if in viewing the

facts in the light most favorable to the plaintiff, there is clearly no claim. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

plainly as possible even though the entire pleading may prove to be long and complicated by virtue of the number of parties and claims.

5 Wright & Miller, *Federal Practice and Procedure: Civil* § 1217 (1969). Thus, under Rule 8(a)(2) the appropriate length and complexity of a complaint will vary with each case. *Crumpacker v. Civiletti,* 90 F.R.D. 326, 329 (N.D.Ind.1981).

■ The purpose of Rule 8(a)(2) is to provide liberal pleading guidelines so that the merits of plaintiffs' claims will not be decided on technicalities. *In re Credit Industrial Corp.,* 366 F.2d 402, 411 (2d Cir. 1966). At the same time, the rule provides sufficient structure so that defendants have notice of and can respond to charges against them. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In the present case, five plaintiffs are raising thirteen separate claims against fifteen separate defendants. Defendant Kobrin is named in counts I through IX. The allegations, while perhaps overly detailed, are pled succinctly and are easily understandable. Given Kobrin's well-briefed Rule 12(b)(6) motion, it is clear he is fully apprised of the charges against him. Plaintiffs have complied with Fed.R.Civ.P. 8(a)(2).

### B. 15 U.S.C. § 78i(e)

■ Kobrin's second contention is that plaintiffs' counts I through IV are time-barred. The complaint was filed on July 5, 1985. Counts I through IV are based upon defendants' alleged manipulations of security prices in violation of 15 U.S.C. § 78i(a)(2), (3), (4) and (6), from January 1983 to October 1983. These sections prohibit manipulating stock prices, selling securities by representing that stock prices can be manipulated, misrepresentations in the purchase and sale of stocks, and fixing stock prices in violation of exchange rules. The governing statute of limitations for these claims, 15 U.S.C. 78i(e), states:

No action shall be maintained to enforce any liability created under this section, unless brought within one year after the

discovery of the facts constituting the violation and within three years after such violation.

This section requires that plaintiffs affirmatively plead facts constituting compliance with the statute. *See Rosenberg v. Hano & Co.,* 26 F.Supp. 160, 161 (E.D.Pa.1938), *aff'd,* 121 F.2d 818, 821 (3d Cir.1941); *see also Wilkinson v. Paine, Webber, Jackson & Curtis, Inc.,* 585 F.Supp. 23, 27 (N.D.Ga. 1983).

In the present case the disputed transactions occurred between January and October 1983. The original complaint was not filed until January 1985. In all five counts the plaintiffs alleged, simply, "the actions complained of in this Count ... were discovered by the Plaintiffs within one year prior to the commencement of this action" (¶¶ 221A, 334A, 445C, 558B).

Kobrin argues that merely alleging compliance with § 78i(e) insufficiently pleads facts showing discovery of the Securities Act's violations. *See Caliber Partners, Ltd. v. Affeld,* 583 F.Supp. 1308, 1312 (N.D. Ill.1984). Kobrin bases his argument on the fact that plaintiffs ceased trading with Aresty and KSI in October 1983. The inference Kobrin draws is that plaintiffs ceased trading because Aresty's stocks did not perform as he represented. Because the stocks did not perform as represented, plaintiffs obviously were aware of the Securities Act's violations in October 1983. Plaintiffs thus had until October 1984 to file their complaint. The complaint, filed in January 1985, should be time-barred.

■ Kobrin's logic is unconvincing. First, whether merely alleging compliance with a Securities Act limitation provision is sufficient to comply with the provision is a fact-specific determination. *Compare Pfohl v. Pelican Landing,* 567 F.Supp. 134, 139 (N.D.Ill.1983) (allegations sufficient) *with Caliber Partners,* 583 F.Supp. at 1312 (allegations insufficient). Under Rule 12(b)(6), a court must assume all well-pleaded facts are true. Thus a 12(b)(6) motion should not be granted on limitations grounds unless the complaint facially shows noncompliance with the limitations

period. *See In re Commonwealth Oil/Tesoro Petroleum Corp. Securities Litigation,* 467 F.Supp. 227, 258 (W.D.Tex. 1979). The present complaint does not facially show such noncompliance. The circumstances surrounding the suspension of trading with Aresty and the specific results of the trading do not appear in the complaint. Second, and closely related, the question of when plaintiffs actually discovered the violations is a question better considered on the basis of a full record, not on the pleadings. *See Alfaro v. E. F. Hutton & Co., Inc.,* 606 F.Supp. 1100, 1111–1112 (E.D.Pa.1985). Kobrin's limitations challenge is thus better considered on a Rule 56 motion for summary judgment. Of course, Kobrin's limitations challenge would only be granted then if there is no question that plaintiffs failed to bring their action within the one-year discovery period provided by § 78i(e). *Wilkinson,* 585 F.Supp. at 26. Plaintiffs' counts I through IV can stand.

## C. Federal Rule of Civil Procedure 9(b)

■ Defendant next argues that plaintiffs' entire complaint should be dismissed for failure to comply with Fed.R.Civ.P. 9(b). Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Kobrin thus places himself in the interesting position of arguing for Rule 8 purposes that the complaint is too detailed, and here, that it is not detailed enough. In any case, the Rule 9(b) requirement must be read in conjunction with the Rule 8(a) requirement of a short and plain statement of the cause of action. *Tomera v. Galt,* 511 F.2d 504, 508 (7th Cir.1975). The purpose of Rule 9(b) is threefold. First, the rule prevents the filing of complaints solely for the purpose of discovering unknown wrongs. Second, the rule protects potential defendants from allegations harmful to reputation. Third, the rule gives notice to defendants of the conduct complained of so they can prepare a defense. *McKee v. Pope, Ballard, Shepard & Fowle, Ltd.,* 604 F.Supp. 927, 930 (N.D.Ill.1985); *Adair v. Hunt International Resources Corp.,* 526 F.Supp. 736, 744 (N.D.Ill.1981).

■ In a securities fraud case plaintiffs need describe only the bare bones of the fraudulent scheme and need not set forth facts which, because discovery has not been completed, are in the exclusive possession of defendants. *Banowitz v. State Exchange Bank,* 600 F.Supp. 1466, 1469 (N.D.Ill.1985). Plaintiff must at least specify the persons, contents and manner of communication of the alleged misrepresentation. *McKee,* 604 F.Supp. at 930. But where there are multiple defendants, a pleading is sufficient when it reasonably notifies each defendant of the part he or she plays in the scheme. *Adair,* 526 F.Supp. at 744. The determination of reasonableness will vary with the parties and the nature of the fraudulent scheme alleged. *See Banowitz,* 600 F.Supp. at 1469.

A discussion of some of the principal cases will be helpful in fleshing out these rules. Kobrin relies on *Lincoln National Bank v. Lampe,* 414 F.Supp. 1270 (N.D.Ill. 1976). In *Lampe,* plaintiff loaned defendant money secured by defendant's worthless counterfeit stock certificates. *Id.* at 1274. Plaintiff alleged that Lampe and other defendants "made representations" without distinguishing between them as to who made the representations and what the representations were. Thus the complaint was fatally defective. *Id.* at 1279. A similar result was reached in the *Adair* case. There numerous plaintiffs from various states sued numerous related corporations, also from various states, for land fraud. The complaint stated "defendants through their officers and agents, and their predecessor and successor corporations under control and direction of the Defendants, their officers, and agents ... made the following false and fraudulent misrepresentations." 526 F.Supp. at 744. The *Adair* court dismissed the complaint on two grounds. First, the complaint was defective because there was no differentiation between each of the defendants' misrepresentations. In light of the fact that defendants were related corporations, mis-

representations of one could not be imputed to another. Second, because the case was a multistate dispute, the particularity requirement was important to protect defendants from unfounded suits in distant and inconvenient forums. *Id.* at 745. Similarly, in *McKee*, plaintiff sued defendants, a law firm, an accounting firm, a bank holding company, a bank and its directors, for fraud in the sale of a bank. Plaintiffs failed to identify which parties made which representations. Plaintiffs were not legally responsible for each others' actions, and thus misrepresentations by one could not be imputed to others. 604 F.Supp. at 931.

On the other hand, the *Banowitz* court upheld allegations of fraud against a group of corporate insiders for the fraudulent sale of investment notes in an insolvent commercial lender. 600 F.Supp. at 1468. The complaint alleged that the defendants engaged in a pattern of self-dealing in the loan company which drained the company's assets, and issued financial statements misrepresenting the company's financial condition. *Id.* at 1468. The court held that because the defendants were all corporate insiders, individual conduct need not be alleged with great specificity. *Id.* at 1469. Similarly, allegations that the sellers of a company stock falsely represented that the company would receive two loans and one capital contribution prior to sale, were sufficient to state a claim for securities fraud because the defendants had adequate notice of the charges against them. *Darling & Co. v. Klouman*, 87 F.R.D. 756, 757–58 (N.D. Ill. 1980). Also, in *Tomera*, the court upheld a complaint that alleged defendants falsely told investors in a mining operation that the company held valid leases and was carrying on mining operations, when in fact the validity of the leases was in doubt and operations had not yet commenced. 511 F.2d at 508.

The common thread running through these cases is that a complaint can withstand a Rule 9(b) motion if it "sufficiently describes the fraudulent act and provides the individuals with sufficient information to answer the allegations." *Id.* Thus Rule 9(b) is nothing more than Rule 8 raised to a

slightly higher level of specificity. *See Tomera*, 511 F.2d at 508; *Adair*, 526 F.Supp. at 744.

■ Plaintiffs' complaint meets this minimal Rule 9(b) requirement. Plaintiff has adequately outlined Kobrin's participation in the alleged fraudulent scheme. Paragraph 34 of the complaint describes Kobrin's initial conversation with Aresty on April 5, 1983. At this time, Kobrin allegedly agreed to handle Aresty's transactions and informed Aresty that he had inside information which Aresty could pass on to Aresty's clients. Paragraph 35 alleges that from April through October 1983 Kobrin passed marketing information directly and indirectly to Aresty, which was in turn passed to the plaintiffs. Paragraph 35A alleges that Aresty acted as Kobrin's agent from April to at least October 1983. During this period all fraudulent activity was committed on behalf of and for the benefit of defendants Kobrin and KSI. Paragraph 36 alleges that all of Aresty's activities from April through October 1983 were controlled by Kobrin and KSI. Paragraphs 41 through 108 detail the time, place and substance of the misrepresentations made by Aresty.

Thus the basic scheme is outlined. Kobrin is alleged to have provided all the information later supplied to plaintiffs through his agent Aresty. The general time, place and substance of Aresty's misrepresentations are detailed. Kobrin clearly has sufficient notice of the charges against him and can understand and respond to them. Plaintiffs have complied with Rule 9(b) in drafting their complaint.

### D. Count VIII: RICO

Kobrin contends that count VIII does not state a RICO cause of action. Kobrin argues that plaintiffs have failed to adequately allege the fraudulent predicate acts under Rule 9(b) and that Kobrin conducted the affairs of an enterprise through a pattern of racketeering activity as required by 18 U.S.C. § 1961(5). Fraudulent sales of securities are racketeering acts prohibited

by RICO. *See* 18 U.S.C. § 1961(1)(D). In count VIII plaintiffs have specifically alleged securities fraud as the predicate racketeering act. As discussed previously, defendants have alleged the outlines of the fraudulent scheme sufficiently to meet the Rule 9(b) requirements. Thus the only issue here is whether plaintiffs have alleged that defendants engaged in a pattern of racketeering activity.

Courts have focused on defining the RICO pattern requirement since the Supreme Court's decision in *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). This court addressed the issue in *Papai v. Cremosnik*, 635 F.Supp. 1402 (N.D.Ill.1986), where we said:

> Thus, we feel the "pattern" standard should at least require multiple criminal "episodes," *i.e.*, illegal transactions separated in time. This standard would exclude the single transaction; for example a bribe which involved two fraudulent mailings.
>
> However, we do not stop at requiring a show of multiple episodes because this alone does not adequately resolve the tension between isolated and ongoing activity. We find that RICO's purposes are best served by also requiring that, from the pleadings, a reasonable inference can be made that these episodes were not an aberration in the way a defendant conducted his business. Rather, the pattern made up of multiple episodes must be a regular part of the way a defendant does business and in that sense, ongoing.

*Id.* at 1412 (citations omitted); *see also Lipin Enterprises, Inc. v. Lee*, 803 F.2d 322, 324 (7th Cir.1986) ("pattern" means acts "committed in a manner characterizing the defendant as a person who regularly commits such crimes"); *Morgan v. Bank of Waukegan*, 804 F.2d 970, 974–975 (7th Cir. 1986).

■ In the present case plaintiff has sufficiently alleged such multiple episodes showing defendants' ongoing practice of conducting their business in a fraudulent

manner. The mere fact that Kobrin is alleged to have provided false information to five individual plaintiffs in order to induce stock purchases is sufficient to allege a pattern of racketeering activity. In addition, the conduct against each individual plaintiff amounts to a pattern of racketeering activity. For example, plaintiff Morgan alleges ten individual stock transactions induced by defendants' misinformation. Each individual transaction constitutes a criminal episode for the purpose of establishing a RICO pattern. *See Papai*, 635 F.Supp. at 1409 n. 5 (an episode is an act having "independent harmful significance"). Similarly, Geist alleges nine individual stock transactions, Marchese five transactions, and the Niwas seven transactions. The complaint clearly alleges that Kobrin engaged in criminal episodes as an integral part of conducting his brokerage business. Thus each individual plaintiff has sufficiently alleged a pattern of racketeering activity by Kobrin and KSI. For this reason, defendants' motion to dismiss count VIII is denied.

### E. Federal Rule of Civil Procedure 19

■ Kobrin next contends that plaintiffs' cause should be dismissed for their inability to join KSI in these proceedings. The action against KSI is presently stayed during its Chapter 11 reorganization. 11 U.S.C. § 362(a) (1982). Fed.R.Civ.P. 19 posits a two-part test for determining whether an action should be dismissed for failure to join a party. First, a party must be joined, where feasible, if he has an interest in the lawsuit that will be prejudiced in his absence. Second, where joinder is not feasible, Rule 19 provides criteria for determining when dismissal is appropriate. *Duman v. Crown Zellerbach Corp.*, 107 F.R.D. 761, 763 (N.D.Ill.1985); *Bedel v. Thompson*, 103 F.R.D. 78, 80 (S.D.Ohio 1984). Dismissal depends upon the degree of prejudice to either absent or remaining parties, the adequacy of the judgment entered in the party's absence, and any alternative forums available to plaintiff if the action is dismissed. *Tillman v. City of*

*Milwaukee,* 715 F.2d 354, 358 (7th Cir. 1983).

The *Bedel* case illustrates the application of these principles. In *Bedel,* the plaintiff sued the directors of a securities firm for filing a fraudulent prospectus and registration statement in violation of the Securities Act of 1933. The securities firm itself was not named as a defendant because it was under Chapter 11 reorganization. The court found that the securities firm was not an indispensable party to the lawsuit because complete relief could be afforded the plaintiffs without joining the firm in the suit. The firm was a joint tortfeasor under the securities law and thus was merely a permissive and not mandatory party to the action. A finding of liability against defendants would not subject the securities firm to inconsistent obligations. *Bedel,* 103 F.R.D. at 81.

All the factors outlined in *Bedel* are present here. Kobrin and the other defendants are presumably solvent and able to satisfy any judgment against them. Possible liability under the Securities and Exchange Act of 1934 is joint and several, so joinder is not mandatory. 15 U.S.C. §§ 78i(e), 78t (1982). Finally, as defendants acknowledge, KSI's liability is primarily vicarious. *See Henricksen v. Henricksen,* 640 F.2d 880, 887–88 (7th Cir.), *cert. denied,* 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 637 (1981). If any of its employees are found liable in this case, KSI's duty to contribute or indemnify can be adequately adjudicated in an adversary proceeding in the bankruptcy court. Not being a party here, KSI will not be bound by *res judicata. Bedel,* 103 F.R.D. at 81. Thus KSI is not prejudiced by its absence from the lawsuit. If in an action for contribution or indemnity KSI were to prevail, it would only affect KSI's obligations to defendants. Such a judgment would subject neither plaintiffs nor defendants to inconsistent liability. *Id.* at 81.

By analogy, the *Duman* case supports this result. *Duman* was a stockholders' derivative suit in which a corporation, but not its directors, was a named defendant. The corporation moved to dismiss for plaintiffs' failure to join the corporation's directors, claiming they were indispensable parties under Rule 19. This court rejected defendants' argument because the corporation could give adequate relief without the presence of the directors in the suit. 107 F.R.D. at 764. Although in the present case the situation is reversed, the analysis holds true. The present defendants can give adequate relief and thus KSI is not an indispensable party. *Id.*

The cases Kobrin relies on are inapposite. *See Acton Co. of Massachusetts v. Bachman Foods, Inc.,* 668 F.2d 76 (1st Cir.1982); *Haas v. Jefferson National Bank,* 442 F.2d 394 (5th Cir.1971). In both *Acton* and *Haas* plaintiffs failed to join parties that would have destroyed the court's diversity jurisdiction. In both cases failure to join subjected the named and unnamed parties to potential double or inconsistent liability. In both cases the state courts provided an adequate alternative forum for the disposition of the litigation.

Here, on the other hand, plaintiffs may not have the opportunity of an alternative forum. Jurisdiction under both the Securities and Exchange Act of 1934 and RICO may well be exclusive in the federal courts. *See* 15 U.S.C. § 78aa (1982); *Kinsey v. Nestor Exploration, Ltd.,* 604 F.Supp. 1365, 1370–1 (E.D.Wash.1985). Dismissal here could leave plaintiffs with no available forum in which to litigate, or at the least would leave the availability of such a forum highly uncertain. Thus dismissal would severely prejudice plaintiffs and is inappropriate.

## II. Motion to Stay

In addition to his motion to dismiss, Kobrin has moved to stay this proceeding on two grounds. First, the entire action should be stayed pending resolution of the bankruptcy proceedings involving KSI. Second, counts I through VIII should be stayed pending arbitration. The motion fails on both grounds.

## A. Motion to Stay for Bankruptcy

 The automatic stay provisions of the Bankruptcy Code apply only to debtors and not non-debtor defendants. *Pitts v. Unarco Industries, Inc.*, 698 F.2d 313 (7th Cir.1983); 11 U.S.C. § 362(a)(1) (1985). Thus the only way this court can stay these proceedings is under its inherent discretionary powers to control its own docket and prevent prejudice. *Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936). However, the *Landis* decision requires that the applicant for a stay clearly show hardship or inequity in being required to go forward. Thus a stay should be granted only under exceptional circumstances. *Id.* at 255, 57 S.Ct. at 166.

An example of the exceptional circumstances warranting the exercise of a discretionary stay can be seen in *Stoller v. Baldwin-United Corp.*, 41 B.R. 884 (S.D. Ohio 1984). In *Stoller,* the court stayed a securities fraud case against a debtor's solvent directors. The court there was faced with the "largest bankruptcy case in American history." *Id.* at 886. The court stayed the proceedings because the claims against the solvent and insolvent co-defendants were inextricably interwoven and because the defendants were actively involved in the reorganization proceedings. However, the stay was limited to six months in order for the court to clear a congested docket while the interlocking claims were being resolved.

By contrast, the same court reached a contrary conclusion in litigation related to the same bankruptcy in *Bedel.* There the allegations focused on the defendant's personal misconduct rather than on claims against the debtor itself. The bankruptcy trustee's investigation was not affected by the litigation nor was discovery hampered by the bankruptcy investigation. Therefore, there was no severe prejudice to the defendants in pursuing the litigation. 103 F.R.D. at 83.

 The case at bar comports factually and legally with *Bedel.* The focus is on the personal misconduct of KSI's directors and employees. Kobrin has not shown the court how this litigation impinges on the bankruptcy proceeding. Kobrin has not defined the interlocking issues which require staying this proceeding. Although much of the potential documentary evidence may be in the hands of the debtor, the trustee will allow supervised access to the documents. Kobrin simply has not met his burden of showing any particular hardship occasioned by this court going forward. In light of the almost certain prejudice to the plaintiffs occasioned by any delay in their suit, Kobrin's motion to stay is denied.

## B. Arbitration Agreement

Finally, Kobrin wishes to invoke an arbitration agreement signed by Geist, Marchese and the Niwas to stay this action pending arbitration. Plaintiffs entered into these arbitration agreements with KSI's clearing agent, Evans & Co. Neither Kobrin nor KSI is a party to the agreements. Nevertheless, Kobrin now contends that he, as president of KSI, acted as Evans & Co.'s agent. As an agent of Evans & Co., Kobrin argues he is deemed a party to the agreements and thus can invoke their arbitration provisions. *See Okcuoglu v. Hess, Grant & Co., Inc.*, 580 F.Supp. 749, 751–52 (E.D. Pa. 1984).

 Agency is a fiduciary relationship whereby a principal consents that the agent shall act on his behalf. *Kyung Sup Ahn v. Rooney, Pace Inc.*, 624 F.Supp. 368, 370 (S.D.N.Y. 1985). The principal's right of control is the most important aspect of that relationship. Where there is no right of control, there is no agency relationship. *Id.; see also International Administrators, Inc. v. Life Insurance Co. of North America*, 553 F.Supp. 82, 85 n. 7 (N.D. Ill. 1982), *aff'd,* 753 F.2d 1373 (7th Cir.1985).

 In the present case, both KSI and Evans & Co. are plaintiffs' agents. It is also possible that Evans & Co. is an agent of KSI. However, Evans & Co. has no right of control over KSI in its dealings with the plaintiffs. Conceivably, KSI could be an agent of both plaintiffs and Evans & Co. *See International Administrators, Inc.*, 553 F.Supp. at 85. However, the

facts at this stage of the proceedings do not reveal such a relationship. *See Kyung Sup Ahn,* 624 F.Supp. at 370; *Okcuoglu,* 580 F.Supp. at 751. As neither Kobrin nor KSI were Evans & Co.'s agents, Kobrin cannot invoke the arbitration agreement between plaintiffs and Evans & Co. Kobrin's motion to stay this proceeding pending arbitration must be denied. *Kyung Sup Ahn,* 624 F.Supp. at 370.

This court therefore need not reach the issue of whether either allegations of Securities and Exchange Act of 1934 violations, or RICO violations, are arbitrable. Similarly, defendants' pendent state claims of common law fraud and violation of the Illinois Securities Act of 1953 will stand.

### CONCLUSION

Defendant Barrett Kobrin's motion to dismiss and motion to stay this action are denied. Defendants Lawrence Zuliani and Rodney A. Brown's motion to be dismissed as parties is granted. Defendant Ronald Hunter's motion to dismiss as to him is granted. Plaintiffs' motion to dismiss the counterclaim of Richard Leon Kobrin is denied.